UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

```
ELIZABETH E. LESSARD,            )
                                 )
        Plaintiff,               )
                                 )
    v.                           )    Case No. 04-4066
                                 )
JO ANNE B. BARNHART,             )
COMMISSIONER OF SOCIAL           )
SECURITY ADMINISTRATION,         )
                                 )
        Defendant.                )
```

## O R D E R

Before the Court are Plaintiff's Motion for Summary Judgment [Doc. # 7] and Defendant's Motion for Summary Affirmance [Doc. # 10]. For the reasons set forth below, Plaintiff's motion will be granted and Defendant's motion will be denied.

**I.    Background**

Plaintiff filed applications for Social Security Income (SSI) on June 13, 2003 and for Disability Insurance Benefits (DIB) on June 25, 2002, alleging a disability onset date of May 31, 2002, due to bad knees and high blood pressure. (R. at 44, 65, 174.) She was 55 years old on the date she filed her DIB application. (R. at 44.) Her application was denied initially and upon reconsideration. (R. at 32, 38.) She then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on July 30, 2003. (R. at 199-220.) Plaintiff (who was represented by counsel) and a vocational expert testified at the hearing. (R. at 200.) In an November 21, 2003 decision, the ALJ found Plaintiff was not entitled to benefits. (R. at 18-24.) On July 15, 2004, the Appeals Council denied Plaintiff's request for review of the

ALJ's decision. (R. at 6.)  The instant civil action was commenced on September 29, 2004.  Plaintiff was approved for benefits on a subsequent application. Therefore, this appeal deals with the period from May 31, 2002 through January 6, 2005.

The record reveals the following regarding Plaintiff's medical condition.  From February 5, 1999 through December 4, 2001, Plaintiff saw Dr. Benjamin Z. Shnurman for various health related complaints. (R. at 118-22.)  In July 2000, Plaintiff reported pain in both legs with prolonged standing.  (R. at 115.)  In November 2001, she reported numbness in the right hand; carpal tunnel syndrome was suspected and plaintiff was referred to Dr. Cullen for an EMG.  (R. at 113.)

On January 9, 2002, Dr. Richard Kreiter, an orthopedic surgeon, saw Plaintiff for complaints of numbness in her right hand.  He noted positive EMG results and diagnosed Plaintiff with carpal tunnel syndrome.  On January 30, 2002, he performed carpal tunnel release surgery.  (R. at 148-49.)  In April 2002, Dr. Kreiter saw Plaintiff for "painful knees and left foot."  At that time, Plaintiff reported her knees had progressively gotten worse over the past several years.  Dr. Kreiter noted from x-rays that there was "near complete loss of the medial joint compartments bilaterally."  He also noted other deformities and opined that she would probably need reconstructive surgery.  (R. at 141.)  On September 4, 2002, Dr. Kreiter noted that Plaintiff "really cannot walk any distance because of the significant pain," that he was aware of her application for disability, and that he provided her with certification for a handicapped parking permit.  (R. at 146.)

2

On September 21, 2002, Plaintiff was seen for an agency-requested consultative examination by Dr. Peter Biale. (R. at 123-26.) Plaintiff reported to Dr. Biale that her bilateral knee pain resulted from multiple injuries she sustained roller skating as a "youngster," and that she recently had carpal-tunnel surgery to the right hand. Dr. Biale also noted that Plaintiff had difficulty squatting and that she had pain when she walked, climbed, or stood. He further noted that she was suppose to use a cane but did not. Dr. Biale observed that Plaintiff was 60 inches tall and weighed 203 pounds at the time of his exam. He also noted that she had decreased range of motion in her knees as follows:

> The motion in both knees had the following limitations: flexion 110 degrees, extension 150 degrees. She cannot squat. She cannot do the heel walk, toe walk or tandem gait. She is prone to falling. She has difficulty getting on and off the examination table. She limps when she walks. At present, she does not use an assistive device.

(R. at 125.) Dr. Biale did not have an opportunity to review knee x-rays. (R. at 124-26.)

State agency physician Dr. Frank Norby reviewed Plaintiff's file on October 3, 2002, concluding that she was capable of lifting 20 pounds occasionally, 10 pounds frequently, with no limitations on sitting, standing, or walking; that she was able to stand or walk for a total of about 6 hours in an 8-hour workday; that she would have an unlimited ability to push or pull; that she could occasionally climb stairs or ramps but never climb ladders, ropes, or scaffolds; and that she could occasionally balance, stoop, kneel, crouch, or crawl. He noted that Plaintiff's postural restrictions were caused by arthritis and obesity, that she had

"severe pain" related to her arthritis, that she had difficulty walking and was prone to falling, and that her range of motion was limited in both knees. (R. at 127-34.)

On November 27, 2002, Dr. Kreiter completed a Residual Functional Capacity Questionnaire concerning Plaintiff. (R. at 136-39.) He noted "severe arthritis knees" as Plaintiff's diagnosis and "guarded–progressive deterioration" as her prognosis. (R. at 136.) He indicated that Plaintiff experienced pain severe enough to interfere with attention and concentration on a frequent to constant basis; that she could only perform work which involved no standing or walking; that she needed to use a cane; that she could lift up to 10 pounds rarely, stand for only 5-10 minutes at a time, and needed to take unscheduled breaks; and that she would miss more than four days of work per month due to her impairments. (R. at 136-39.)

On December 4, 2002, Plaintiff returned to Dr. Kreiter complaining of increased trouble with her knees including pain with walking, and symptoms of carpal tunnel syndrome in her left hand. Dr. Kreiter prescribed a cane and a splint for the left wrist. (R. at 146.) On July 23, 2003, Dr. Kreiter added that following language to his November 27, 2002 questionnaire: "Condition progressively getting worse. Painful [with] all walking and standing. Will come to total knee replacements in future." (R. at 170.) In December 2003, in records submitted to the Appeals Council, Dr. Kreiter indicated that Ms. Lessard was in pain most of the time, and that he was going to proceed with scheduling knee replacements. (R. at 192-93.)

At the administrative hearing, Plaintiff testified that she last worked on May 31, 2002 as a cashier at Dollar General Store. She testified that Dr. Kreiter advised her that she should not be working at this job. (R. at 201A.) Other jobs she held in the past included apartment complex manager, customer service clerk, nursing assistant and unit clerk in a hospital. (R. at 202-05.)

Plaintiff stated that she continues to have pain and numbness in both hands from carpal tunnel syndrome and that the surgery on the right hand helped for a time, but symptoms had returned. (R. at 208-09.) Plaintiff testified that she walks with a cane, but using it aggravates the numbness in her left hand. She stated that she was reluctant to use the cane for a time after it was prescribed because she did not want to admit she had a problem. (R. at 208-09.) Plaintiff testified that during the day she did chores in intervals and that she could prepare meals, make beds, vacuum and mop this way. However, she also testified that a couple days a week she was not able to do chores because of her pain and limitations. (R. at 210-11.) Plaintiff testified that she drove and did grocery shopping, and that while she had difficulty getting in and out of a car, she did not have any problems operating the foot controls. (R. at 211.)

In questioning the vocational expert, the ALJ asked the following:

> I'd like you to consider as of her AOD in May of '02 she would have been 55 years old. She's currently 56. She completed the 12th grade of school. She has a CNA certificate according to the record and she also has a certified nursing assistant certificate for which she received special job training, according to Exhibit 2E, page eight. She is not alleging any mental limitations

5

> nor are any highlighted in the record. Exertionally she
> should be able to occasionally lift 20 pounds, frequently
> lift 10 pounds; sit, stand, and walk with normal breaks
> in an eight-hour workday; unlimited ability to push and
> pull; occasional climbing ramps, stairs, ladders, ropes,
> and scaffolding; occasional balancing, stooping,
> kneeling, crouching, and crawling. This is due primarily
> to the degenerative arthritis that is evident in her left
> knee joint space and also to her being overweight. There
> are no manipulative limitations established in the
> record. The doctor said her carpal tunnel surgery was
> successful and she was doing well. She has no visual
> communicative limitations and no environmental
> limitations. With those restrictions, would she be able
> to perform any work she had done in the past.

The VE testified that with these limitations the individual could return to past relevant work as a cashier, apartment complex manager, and unit secretary. She also testified that there were transferable skills which could transfer to other light positions. (R. at 215-16.) Plaintiff's attorney presented an alternative hypothetical following Dr. Kreiter's opinion which included lifting only 10 pounds, sitting for 15-20 minutes at a time, standing for 15-20 minutes at a time, with the need for unscheduled breaks and to be absent from work four days per month. (R. at 218.) In response to this, the VE testified that there would be no competitive employment available. (R. at 219.)

In her November 21, 2003 decision, the ALJ found that Plaintiff had severe degenerative arthritis in the knees with van's deformity and patellofemoral malalignment and carpal tunnel syndrome in both hands with surgical release on the right, but that she did not have an impairment or combination of impairments listed in or medically equal to those listed in the regulations. She found that Plaintiff's allegations as to her impairments were inconsistent with the record and could not be accorded more than

minimal weight. In addition, she found that little weight could be accorded Dr. Kreiter's assessment of Plaintiff's residual functional capacity (RFC). The ALJ found that Plaintiff could lift up to 10 pounds frequently and 20 pounds occasionally; that with normal breaks she could sit, stand and walk throughout a normal eight hour workday; that she could climb ramps, stairs, ladders and scaffolds occasionally; that she could balance, stoop, kneel, crouch and crawl occasionally; that she had no difficulty pushing, pulling or manipulating objects; and that she had no visual, communicative or environmental limitations. Based on this RFC, the ALJ found that Plaintiff could perform her past relevant work as a cashier/checker, apartment complex manager and unit secretary, and that jobs still exist in significant numbers in the national economy that she could perform. Thus, the ALJ found Plaintiff was not disabled. (R. at 18-24.)

## II. **Legal Standard**

In order to be entitled to disability insurance benefits, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. See 20 C.F.R. § 404.1505. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. See 20 C.F.R. § 404.1566.

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has

lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. See McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. See 20 C.F.R. §§ 404.1520.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. § 404.1521,); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Pt. 404, Subpt. P, App. 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. See Garfield v. Schweiker, 732 F.2d 605, 607 n.2 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. See Tom v. Heckler, 779 F.2d 1250, 1253 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence.  See Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).  The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous.  See Imani v. Heckler, 797 F.2d 508, 510 (7th Cir.), cert. denied, 479 U.S. 988 (1986).

### III. **Analysis**

Plaintiff argues (1) her knee condition meets listing 1.02 of the Social Security Regulations, (2) that the ALJ's residual functional capacity (RFC) finding was not supported by substantial evidence, and (3) the ALJ failed to properly consider Plaintiff's obesity under the rules.

In her written decision, the ALJ gave Plaintiff's testimony and Dr. Kreiter's assessment of Plaintiff's RFC minimal weight, explaining only that this evidence was inconsistent with Plaintiff's testimony regarding her daily activities of household chores.  Instead, the ALJ adopted a non-examining, non-treating physicians assessment of Plaintiff's abilities.

The Seventh Circuit has cautioned against placing undue weight

on a claimant's household activities in assessing the claimant's ability to hold a job outside the home. "The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work." Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006). In this case, Plaintiff testified that she needed to do her household chores in intervals because of her impairments, and that she was unable to do the chores several days a week. Further, all of the examining medical sources recognized that Plaintiff had severely arthritic knees which caused her a significant amount of pain and impaired her ability to walk. The ALJ chose to ignore all of this evidence based on Plaintiff's limited ability to do household chores. On this record, the Court cannot say the ALJ's findings were based on substantial evidence.

Accordingly, the Court will remand this case back to the Social Security Administration for further proceedings consistent with this Order. On remand, if it is found that Plaintiff's knee impairment is not of listing level severity, the decision maker should articulate its reasons for so finding. Moreover, specific reasons should also be given for any RFC finding that is inconsistent with the medical evidence, in particular, the decision maker should explain any rejection of an examining physician's observations or opinions. Finally, the decision maker should explain any RFC finding that is inconsistent with Plaintiff's testimony regarding her pain and limitations to the extent there is medical evidence to support Plaintiff's allegations.

## IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 7] is GRANTED and Defendant's Motion for Summary Affirmance [Doc. # 10] is DENIED. This case is remanded, pursuant to the fourth sentence of 42 U.S.C. § 405(g), to the Social Security Administration for further proceedings consistent with this Order.

Entered this 27th day of September, 2006.

s/ Joe B. McDade<br>
Joe Billy McDade<br>
United States District Judge